# CASES

## DECIDED IN THE

## COURT OF CHANCERY OF NEW-JERSEY,

### APRIL TERM, 1831.

---

### JACOB S. VANNESS v. SIMON VANNESS.

Upon a bill filed in this court by a purchaser at sheriff's sale, showing that the judgment under which he purchased was entered in the minutes, but not recorded, and the execution was erroneously described in the deed; the sheriff's deed may be reformed. But whether the judgment could be supplied, or the defendant injoined from taking advantage of the want of it, in a proceeding at law, *query*.

Where the purchase at the sheriff's sale was made at the request, or with the consent of defendant in execution, and for his benefit, upon an express agreement, that he should be at liberty to redeem; and complainant was to hold such interest under the sheriff's deed as would indemnify him for the money advanced; and the one intended to give, and the other to receive, a valid security; although it turns out to be insufficient in law, yet the purchaser has, in equity, a vested lien on the property for the amount of his demand, and the defendant is estopped from coming into this court and setting up any defect in the title.

The conveyance of the sheriff under these circumstances is to be considered as the act of the defendant himself, and he shall not be permitted to impugn it; as between him and the purchaser he is precluded.

And if the defendant fail to pay, the property may be sold for the payment of what is due the purchaser, or the equity of redemption of the defendant foreclosed.

IN this case, it appears, that two judgments were obtained against Simon Vanness, in the common pleas of the county of Bergen: that at his request, Jacob S. Vanness paid the amount due thereon, and took an assignment of the judgments. Ano-

ther judgment was obtained by William and Robert Colfax against Simon Vanness, and execution issued; upon which the sheriff of Morris advertised and sold his property. Jacob Vanness became the purchaser, at the request and for the benefit of Simon, upon an understanding between them that Jacob should take the sheriff's deed and hold it as security for the money advanced, and Simon should be at liberty to redeem upon repayment of the monies due from him to Jacob. Jacob accordingly paid the purchase money, and took the sheriff's deed. Simon continued to occupy the premises for some time, but failing to make payment, Jacob brought an ejectment to recover the possession. Upon this Simon filed his bill, setting forth the facts, offering to pay what was due to Jacob, and praying that he might be permitted to redeem, and also for an injunction to stay proceedings in the ejectment; which was allowed. Under this bill an account was taken, and the amount due from Simon to Jacob ascertained; but he failing to pay the same, according to the decree of the court, his bill was finally dismissed, and the injunction dissolved. Jacob then attempted to proceed in the ejectment, but discovering that the judgment on which the property was sold, although regularly entered, had not been recorded; and that the execution was misrecited in the sheriff's deed, he filed the present bill, praying that the sheriff's deed might be reformed, and Simon restrained by injunction from setting up this discrepancy as to the execution, or the want of a record of the judgment; or that the deed might be established as a lien or equitable mortgage upon the premises, and that the premises might be sold, or the equity of redemption foreclosed. To this bill Simon demurred; and the cause came on to be heard upon the bill and demurrer.

*T. Frelinghuysen*, for complainant. The bill has two general objects: 1. In aid of the ejectment at law, to reform the sheriff's deed, or injoin the defendant from setting up the mistake in reciting the execution, or the want of a record of the judgment in that suit; and 2. To establish the sheriff's deed as a mortgage or lien upon the property, and that the premises may be sold as the defendant's, and he in like manner injoined from

April, 1831.

Vanness
v.
Vanness.

April, 1831.

Vanness
v.
Vanness.

setting up these mistakes and discrepancies. The state of facts to sustain this equity we have from the defendant, Simon Vanness himself, and sworn to by him in his bill against Jacob, filed in this court, for an injunction against the prosecution of an ejectment, which Jacob had instituted against him. The facts stated in that bill, are, 1. That Robert Colfax and William Colfax, in 1806, obtained a judgment in the supreme court against Simon Vanness, the complainant, for four hundred and thirty-one dollars and thirty-five cents debt, and one hundred and nine dollars and twenty-six cents cost: 2. The execution, to Edward Condict, sheriff: 3. The sheriff's sale: 4. The embarrassment of the defendant, his application to this complainant, and the arrangement between them, that this complainant should advance the money, and receive the sheriff's deed as an indemnity; that the sheriff's deed was given to this complainant accordingly, on the 19th May, 1807; and that said defendant had applied for a reconveyance. The prayer of that bill was for a reconveyance; said Simon alleging himself willing and ready to account with the said Jacob, of and concerning any sums of money *intended to be secured by said deed.* Such proceedings were had on that bill, that the sum of two thousand six hundred and twenty-nine dollars and twenty-one cents, was found due to this complainant, under the security of said sheriff's deed; and the court decreed, that on the payment of that sum, with interest and costs, this complainant, Jacob Vanness, (who was defendant in that case,) should reconvey to Simon; otherwise the said Simon's bill should be dismissed.

Under these circumstances, one plain condition of the parties is manifest: Simon is the borrower of money from Jacob, with these premises pledged as security, in this mode, of judgment, sheriff's sale, and deed, by the proposal of Simon himself. In this court, and as against Simon Vanness, this sheriff's deed is his mortgage to us, and he is fixed and concluded with every fact asserted in it. This he would be, had he not filed the bill to which I have alluded. Proving against him, his application to us to attend the sheriff's sale, and for his benefit receiving the sheriff's deed, would implicate him directly as a *party*, essentially connected with the whole transaction; and he would be estop-

ped in this court from disputing any of the matters, the existence of which was indispensable to the very arrangement which he, Simon, himself proposed. But in addition to this, he has thus distinctly and solemnly admitted and affirmed the whole history of this transaction, as set forth by us.

A party by his conduct and acquiescence will, in equity, be estopped from asserting his title, however good and valid it may be; and he will be precluded from impeaching his title by raising technical exceptions. These principles apply to the case, as considering this sheriff's deed as Simon's security to us: he proposed it, and adopted it, and substantially made it his own, and therefore he cannot gainsay it: 6 *Johns. C. R.* 166. But, second, he cannot dispute it, because he has in this court affirmed the contrary, sought relief, and obtained the interposition of this court by way of injunction; and sought and had a fair and full investigation and hearing upon a state of facts admitting the deed, execution and judgment, and therefore he cannot now dispute it. And, third, it is an admission on record, express and explicit, and never can be recalled or contradicted, especially in the same court.

The rule of law, that a party shall not impugn or defeat his own security, runs through all contracts; nay, a mortgagor will not be allowed even to set up a valid prior mortgage, when there is no mistake or discrepancy, because it would defeat his own title. So if a man had only by parol, acknowledged that he had no title, and had agreed to purchase the premises of the sheriff, he shall not be permitted to dispute the sheriff's title after such acknowledgment. So a party cannot contradict by evidence, what he has admitted in the pleadings, nor can the jury find any fact contrary to such admissions. In admissions that have been acted on, the party is usually concluded absolutely. In truth, it was deemed almost safe to go on at law; the only doubt arose from the strictness of that court, in requiring a formal judgment, and this recital of the execution being *a statute regulation :* the result of a dry rule at law, was feared in a strict court: *Bull. N. P.* 110, 298; *Gould's Esp.* 457; 4 *pt. Starkie*, 29, 20, 31; 8 *East. R.* 493, 458; 3 *John. R.* 459; 6 *John. R.* 499; 1 *Salk.* 286.

The equity of our case is, therefore, that after such repeated recognitions and admissions by Simon Vanness, and after he has induced us, on the faith of them, to act in this matter, he shall not dispute the existence of the judgment or the execution. And the rather we resort to this court, as, although the chancellor might think that on this point we were in no danger at law, yet we might still proceed in equity *for the sale* of these premises: for we are not bound to take the deed as an absolute one. The decree in the case of Simon, v. Jacob Vanness, directs upon what terms Simon may have a reconveyance; but it leaves Jacob to all his remedies on the sheriff's deed or otherwise. Then we are entitled to have Simon restrained from setting up these defects at law, in the ejectment or in any other suit, under the authority of the sheriff's deed, and the decree of this court; or to a foreclosure of the equity of redemption, or sale of the premises, considering the deed as an equitable mortgage at least. And on the whole, we prefer a decree of foreclosure to that of sale, and pray accordingly. Then we can proceed at law, without the obstacles of this discrepancy and the defect of a formal judgment to embarrass us.

*S. Scudder*, for the defendant. 1. The demurrer denies the equity of the complainant's bill; and if the demurrer be well taken, the bill must be dismissed with costs: *Harrison's Ch. P.* 210; *Mitford*, 99; *ibid*, 102.

2. As to the two judgments against Simon Vanness, the defendant, in the common pleas of Bergen county, which the complainant alleges he paid. The bill does not state the amount of these judgments, or when they were entered; but it alleges that when complainant paid them, and took an assignment of the judgments, he thereby took the judgments as security for the money paid; and the fair presumption is, that there was property of the defendant in the county of Bergen, on which the judgments might have been executed, or the complainant would not have taken an assignment; and if he has neglected his remedy at law, he cannot come to equity for relief.

3. The bill alleges that Edward Condict, then sheriff of the county of Morris, by virtue of an execution against goods and

lands, issued out of the supreme court of New-Jersey, at the suit of Robert and William Colfax, against Simon Vanness, advertised the premises in question to be sold on the 7th of May, 1807 : that Simon agreed that Jacob should buy the lands at the sheriff's sale, and that Jacob did buy, and paid the money mentioned in the execution, and took the sheriff's deed, and was to hold the lands subject to the equity of redemption still to be left remaining in Simon.

4. That of the term of May, 1824, Jacob brought ejectment, to which Simon appeared ; and afterwards, in January, 1825, brought his bill in this court for relief, and obtained an injunction to stay proceedings in the ejectment ; that Jacob answered his bill; that an account was taken before a master, who reported that Simon was indebted to Jacob two thousand six hundred and twenty-nine dollars and twenty-one cents ; that a final decree was made thereupon, and that Simon was ordered to pay that sum of money to Jacob in six months thereafter, or that his bill should stand dismissed out of this court with costs. That Simon did not pay the money within the time limited, and that his bill was dismissed and stands dismissed out of this court with costs.

Now the only evidence before the court upon the complainant's bill in this case, that Simon the defendant is indebted to Jacob the complainant in the sum of two thousand six hundred and twenty-nine dollars and twenty-one cents, is the decree upon the report of the master, confirming that report ; and by the complainant's own showing, the bill upon which that decree was made, stands dismissed out of court ; and consequently, every thing that before had legal form and effect, was by the dismissal of the bill dissolved. So an injunction, by the dismissal of a bill, is dissolved : 1 *Harrison's Ch.* 317.

5. That after the bill of Simon was dismissed, then Jacob proceeded in his ejectment ; and on search for evidence to support his ejectment, he could find no judgment or execution, and the complainant's bill expressly charges that there never was any such judgment or execution.

Now where is the complainant's equity ? He seeks to attach his pretended debt to the lands for which the sheriff gave a deed,

or to have the defendant estopped from setting up, on the trial of the ejectment, the want of a judgment and execution, to support the deed made by the sheriff.

By what right, or even colour of right, can the complainant's debt attach to the land? The sheriff's deed is not a defective execution of a power, it is an act done without any power at all. To enable the sheriff to sell, there must be a regular judgment and execution, and the execution must be recorded. In this case there is neither.

By what authority does this court hold lands bound for a debt? 1. When they are mortgaged for the debt, then the legal title is in the mortgagee, and the equity to redeem only in the debtor. 2. When the purchase money has not been paid, and a subsequent purchaser knows the fact, because the purchase money is an equitable lien upon the land. 3. When there is an equitable mortgage; i. e. when the attending circumstances are such as to show that the parties intended to mortgage, then equity will consider that done which ought to have been done; but even then, the court must assume that the mortgage was made: And when a man has borrowed money upon an agreement to mortgage, and left his title deeds.

But here there was no agreement to mortgage. The agreement was that the complainant should take the sheriff's deed; but it turned out that the sheriff could make no deed, and never did make any: for though he may have signed a paper in the form of a deed, still it is no deed, for he had no power to make one.

There is nothing, then, to enable the court to interfere; there is no fraud on the part of the defendant, or of any other person connected with him. The inattention of parties in a court of law can scarcely be made the subject of interference in a court of equity: 1 *Sch. and Lef.* 205. The entry of the judgment and the recording and signing, was no duty of the defendant. The proceeding was an adverse proceeding against him, contrary to his will; and though he may have supposed there was a judgment by which his lands might be sold against his will, still, there being no judgment, his lands remain unaffected by any rule of law or equity.

April, 1831.

Vanness
v.
Vanness.

The complainant has a full and complete remedy at law: if the defendant owes him a debt, judgment may be obtained, and the lands subjected to its operation.

The court is asked to reform the deed. The answer I make to this is, I know of no such power in the court. Besides, there can be no deed without the previous proceedings on which to found it; and it will hardly be pretended that a court of equity can make a judgment for a court of law.

Lastly, the doctrine of estoppel is set up; odious at law, and where to be found in equity, the complainant's counsel has not attempted to show us: all his cases cited are cases at law.

They say that Simon will not be permitted to contradict the title made by the sheriff to Jacob, because by his bill he has already admitted it. I do not mean to say that Simon could be allowed to deny a fact admitted in his bill, heretofore dismissed, unless that fact was admitted by mistake. But Simon is not put to that necessity, for the complainant expressly states in his bill, that there was not any judgment or execution, and shows that Simon was mistaken in what he said in his bill. What the complainant means when he says Simon will not be permitted to deny the title made by the sheriff to Jacob, is difficult to understand. For the complainant, by his bill, expressly states all those facts which show that the sheriff made no title, and could make no title.

Now the doctrine of estoppel is, that where a man has admitted a fact in a deed, he shall not be permitted to deny the fact, though he could prove it otherwise. But if his adversary admitted the fact to be otherwise, I believe he would be allowed to agree with his adversary in the fact.

I can see no reason for maintaining this bill in any point of view. The complainant, by his own showing, exonerates the defendant from fraud, deceit, or any kind of management. It is the duty of the purchaser at sheriff's sale, to see that he has power to sell. *Caveat emptor* is the rule.

The parties stand in the same situation that they would if Jacob had bought at the sheriff's sale without the knowledge of

Simon, or against his will, except that Jacob, having paid the debt of Simon to Robert and William Colfax, by the request of Simon, he may recover it back at law. I therefore pray that the complainant's bill may be dismissed, with costs.

THE CHANCELLOR. It appears that prior to the year 1807, this defendant became embarrassed in his circumstances, and was indebted, among others, to the complainant, and particularly in the amount of two judgments, which were outstanding against the defendant, and which had been assigned over to the complainant at the defendant's request, on his paying the amount to the persons entitled. In May, 1807, his property was advertised to be sold by the sheriff of the county of Morris, on a judgment and execution in favour of William Colfax and Robert Colfax. At the request of the defendant, the complainant purchased the property at the sale, and took a sheriff's deed. It was expressly agreed that the defendant might redeem it on paying what was justly due to the complainant. The defendant continued in possession of the premises thus purchased for a number of years. And during this time the complainant made further advances of money to the defendant, until, the defendant ultimately refusing to account for the monies received, or to pay the amount justly due, the complainant instituted an action of ejectment against him in the supreme court, in 1824, for the recovery of the possession of the premises conveyed to him in the sheriff's deed. Upon this the defendant filed a bill in this court, setting out particularly the facts of the judgment, the execution, the sheriff's sale, the agreement and the deed, and insisted that he was not indebted on a just account being taken, and that this complainant should be decreed to reconvey the property to him. The complainant was thereupon injoined from proceeding in the ejectment. The cause having been put at issue, and testimony taken on both sides, came on to be heard; and it was decided that the sheriff's deed was taken and held by this complainant to secure, save harmless and indemnify him for all advancements made, and responsibilities incurred by him for the defendant; and it was referred to a master to take an account of what was

April, 1831.

Vanness
v.
Vanness.

due, if any thing, from the one party to the other. The master reported that there was due from Simon Vanness, the defendant in this cause, to Jacob S. Vanness, the complainant, in the sum of two thousand six hundred and twenty-nine dollars and twenty-one cents, for monies paid and advanced to and for the use of the said Simon Vanness, and which were to be secured by the said sheriff's deed. This report was afterwards confirmed; and it was ordered and decreed that the said Simon Vanness should pay the amount of it to Jacob S. Vanness in six months, and that upon such payment, Jacob S. Vanness should convey the said land and premises contained in the sheriff's deed to the said Simon. And it was further ordered, that if the said Simon should refuse to pay the amount due, within the said six months, that the injunction should be dissolved and the bill dismissed. He refused to pay the money found due, and the injunction was accordingly dissolved. The complainant was then about to proceed with his ejectment for the purpose of recovering possession of the property, when he discovered, upon examination, that the judgment on which the execution issued, by virtue of which the property was sold, was not recorded and signed, though duly entered in the minutes of the court; and also that the execution was erroneously set out and described in the said deed. Under these circumstances *he* now comes into this court for relief. He seeks it in one of two ways; and prays, either that the defendant may be restrained from denying the existence of a judgment, which in his own bill he admitted, and that he may be restrained from setting up, on the trial of the cause, the discrepancies between the execution and the sheriff's deed, or that in respect to them the sheriff's deed may be amended; or, he prays, that as the property has been declared by this court to be subject to a right of redemption, (which he acknowledges to be correct,) and inasmuch as the defendant has refused to pay the amount found due from him to the complainant, as heretofore ascertained by one of the masters of this court, and as the said amount is still due, that the defendant be decreed to pay the same to the complainant by some short day, and in default thereof, that he be for ever debarred and foreclosed of and from all right and equity of redemption of and in the said lands, if he have any under the cir-

cumstances of the case; or otherwise, that the land may be sold for the payment and satisfaction of the complainant's claim.

To this bill the defendant has demurred, and the case is submitted to the court.

I deem it unnecessary to discuss the question, how far this court might lawfully go in directing a court of law to dispense with the production of a judgment, which upon settled principles in such courts is necessary to the establishment of a strict legal title. The sheriff's deed might be reformed; but unless the judgment could be supplied, or the party enjoined from taking advantage of the want of it, the correction would be of no avail. The complainant's remedy appears to me to grow naturally out of the other aspect of the bill. The purchase was made originally with the consent, if not at the request of the defendant, and certainly for his benefit. The complainant was to have such an interest in the property as would indemnify him for the money he had paid, and for what he should afterwards advance. And he was to hold this interest under the sheriff's deed. Such was the security offered by the defendant, and accepted by the complainant. Now admitting the deed to be defective, it was unknown to both parties. The one intended to give, and the other to receive, a sufficient and valid security. And although it turns out to be insufficient in law, yet the party has, in equity, a vested claim or lien on the property for the amount of his demand, and the defendant is estopped from coming into this court and setting up any defect in the title. This conveyance of the sheriff, under the circumstances presented in the bill, is justly to be considered as the act of the defendant himself, and he shall not be permitted to impugn it. There are no other parties interested, so far as is known to the court, and as between him and the complainant, he is precluded.

And this places the matter on the most favourable footing for the defendant. If the property is worth more than the amount for which it is held, he will be at liberty to redeem it on payment of the sum actually due. Any other measure of justice the defendant ought not to require. If he fail to do so, I see no reason why the property should not be sold for the payment of what is

honestly due the complainant, or the right of the defendant entirely foreclosed.

The proper mode in which to afford relief, and also the mode of ascertaining the amount, are matters not necessary now to be decided.

Let the demurrer be overruled, with costs.